No. 16-30179

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE,

V.

AMMON BUNDY,

DEFENDANT-APPELLANT.

CIRCUIT RULE 9-1.1 APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
THE HONORABLE ANNA J. BROWN, U.S. DISTRICT JUDGE (TRIAL JUDGE)
THE HONORABLE ROBERT E. JONES, SR. U.S. DISTRICT JUDGE (RELEASE DECISION)
D.C. NO. 3:16-CR-00051-BR

PLAINTIFF-APPELLEE'S RESPONSE IN OPPOSITION TO
DEFENDANT'S 9-1.1(A) MOTION

BILLY J. WILLIAMS
UNITED STATES ATTORNEY
DISTRICT OF OREGON
**KELLY A. ZUSMAN**
APPELLATE CHIEF
ASSISTANT UNITED STATES ATTORNEY
1000 SW THIRD AVENUE, SUITE 600
PORTLAND, OREGON 97204-2902
TELEPHONE: (503) 727-1000

## TABLE OF CONTENTS

Table of Authorities ...................................................................................... ii

Introduction .................................................................................................. 1

Standard of Review ...................................................................................... 2

Argument

The District Court Correctly Denied Bail; Defendant Poses a Significant
Risk of Non-Appearance and Community Danger ....................................... 2

Conclusion.................................................................................................... 9

i

# TABLE OF AUTHORITES
# FEDERAL CASES

*United States v. Fidler*, 419 F.3d 1026 (9th Cir. 2005)......................................................... 1, 2

*United States v. Hammond,* 742 F.3d 880 (9th Cir. 2014),
  *cert. denied*, 135 S. Ct. 1545 (2015) ........................................................................... 4, 8

*United States v. Hato Rey Bldg. Co., Inc.,* 886 F.2d 448 (1st Cir. 1989) ................................ 5

*United States v. Hir*, 517 F.3d 1081 (9th Cir. 2008) ................................................................. 3

*United States v. Motamedi*, 767 F.2d 1403 (9th Cir. 1985).................................................... 2

*United States v. Pappas,* 814 F.2d 1342 (9th Cir. 1987) ......................................................... 4

*United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015)............................................... 2

*United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990) ................................................... 2, 6

*United States v. Winsor,* 785 F.2d 755 (9th Cir. 1986)........................................................... 7

*Wisconsin Valley Improvement Co. v. United States,* 569 F.3d 331 (7th Cir. 2009)................. 4

# DOCKETED CASES

*United States v. Fry*, No. 16-30174 (9th Cir. 2016) ................................................................ 8

## FEDERAL STATUTES

18 U.S.C. § 2 ............................................................................................... 1

18 U.S.C. § 372 ........................................................................................... 1

18 U.S.C. § 930 ........................................................................................... 1

18 U.S.C. § 3142 ......................................................................................... 2

28 U.S.C. § 2409 ......................................................................................... 5

## OTHER

Oregon standoff: Bundy, militants destroy fence at federal refuge, OregonLive.com (January 11, 2016), http://www.oregonlive.com/oregon-standoff/2016/01/oregon_standoff_bundy_militant.html ............................................................................................. 7

## INTRODUCTION

Defendant Ammon Bundy led a group of armed individuals who took over the Malheur National Wildlife Refuge (NWR) from January 2 to January 26, 2016. (Def. Ex. 2 at 80-81). He is charged with conspiracy to impede officers of the United States in violation of 18 U.S.C. § 372 and possession of firearms and dangerous weapons in federal facilities in violation of 18 U.S.C. §§ 930(b) and (2). The former charge carries a six-year statutory maximum penalty and the latter charge carries a five-year maximum term. He is also charged with participating in a similar conspiracy in 2014 in a separate case pending in Nevada; those charges, however, include more serious penalties and presumptive detention. The District of Nevada has entered a detainer against Bundy and he has not appealed that ruling. (Gov't Ex. 1). As a consequence, even if this Court were to disagree with the Oregon court's release decision, Bundy would not be released pending his September 2016 trial in Oregon. In any event, the district court's ruling in this case is sound and Bundy's bail motion should be denied.

## STANDARD OF REVIEW

The district court's fact findings are reviewed for clear error; this Court also conducts an independent review of the findings to determine whether the bail order may be upheld. *United States v. Fidler*, 419 F.3d 1026, 1029 (9th Cir. 2005).

1

# ARGUMENT

## The District Court Correctly Denied Bail; Defendant Poses a Significant Risk of Non-Appearance and Community Danger.

The statute governing bail generally favors release, and doubts should be resolved in a defendant's favor. *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). The government bears the burden of proving by a preponderance that a defendant is a flight risk; community danger requires proof by clear and convincing evidence. *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015). Whether a defendant may be safely released on conditions requires that a court consider four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the nature and seriousness of the danger posed to the community; and (4) defendant's history and characteristics. 18 U.S.C. § 3142(g).

Even absent a statutory presumption, facts underlying a particular crime may give rise to a supportable finding that a defendant poses a danger. For example, a defendant charged with fraud who made hostile and threatening statements to victims involved in a civil action was properly detained as a danger to the community. *Fidler*, 419 F.3d at 1029. The nature of the offense—even if not technically a crime of violence—may also favor detention. *See, e.g.*, *United States v. Townsend,* 897 F.2d 989, 994 (9th Cir. 1990) (holding that non-violent but "sophisticated" criminal conduct giving rise to 35- to 70-year potential sentences justified pretrial detention). And even a first-time offender may pose a community danger given the nature of the charge,

2

particularly when the evidence against the defendant is strong. *See, e.g.*, *United States v. Hir*, 517 F.3d 1081, 1085-86 (9th Cir. 2008) (affirming detention in a presumption case for a defendant with no prior criminal history).

Pretrial Services recommended Bundy's detention. (Def. Ex. 2 at 7). After an evidentiary hearing, a district judge concluded that Bundy posed a risk of nonappearance and a danger to the community that could not be adequately addressed through conditions. Both Pretrial Services and the district court reached the right conclusion.

First, Bundy fails to address the fact that even if this Court were to conclude that the district court erred in some respect, he would nevertheless remain in custody on the Nevada detainer. The district court relied on that fact on the first page of its detention order. Defendant cannot achieve the result he seeks in this appeal—release from custody—because he will remain in custody based upon Nevada's detention order (and he has not appealed that order). (Gov't Ex. 1).

Even if this Court were to conclude that the Oregon release decision is nevertheless reviewable despite this impediment, the district court's detention decision is sound because the record supports its conclusion that Bundy poses both a risk of non-appearance and a danger to the community, and conditions cannot adequately address those risks.

The nature and circumstances of the charges relate directly to Bundy's resistance to lawful authority. The Malheur Occupation began because Bundy and his followers disagreed with this Court's ruling in *United States v. Hammond,* 742 F.3d 880 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1545 (2015). Approximately nine months after the Supreme Court denied certiorari, Bundy continued to insist that the Hammonds were innocent (despite the jury's guilty verdict) and their resentencing was illegal and violated the Double Jeopardy Clause (despite this Court's unequivocal holding to the contrary). (Def. Ex. 2 at 39). Bundy's original intent in traveling to Burns, Oregon, was to "decide whether we allow these things to go on." (*Id.*).

Thus, Bundy's statements reveal that he considered his own opinions superior to that of the federal courts. He was prepared to prevent the Hammonds from turning themselves into authorities to serve their court-imposed sentences despite this Court's ruling that the five-year sentences were lawful, and the Supreme Court's refusal to hear the matter further. When the Hammonds' rebuffed Bundy's efforts, he shifted gears and decided to take over the Malheur NWR and assume control via adverse possession. (Def. Ex. 2 at 84, 93).

As the district court correctly recognized, Bundy's adverse possession theory is fatally flawed because it does not apply to the federal government. (Def. Ex. 1 at 2); *United States v. Pappas,* 814 F.2d 1342, 1343 n.3 (9th Cir. 1987); *see also Wisconsin Valley Improvement Co. v. United States,* 569 F.3d 331, 335 (7th Cir. 2009) (noting that 28 U.S.C.

2409a(n) forbids adverse possession claims against the United States); *United States v. Hato Rey Bldg. Co., Inc.,* 886 F.2d 448, 450 (1st Cir. 1989) (same). Regardless of whether Bundy's belief in this flawed theory was genuine, it nevertheless reveals his unwillingness to accept lawful authority. This demonstrated characteristic makes Bundy a poor candidate for release both because he is unlikely to abide by his release conditions and appear, and because his adherence to these misguided beliefs pose a threat that he will stage further armed resistance in the community. Bundy was prepared to thwart the Hammonds' return to prison pursuant to this Court's order; the district court reasonably concluded that Bundy was likely to apply a similar rationale to his own case.

The district court also properly focused on the danger posed by Bundy's armed entourage, noting that they used "military-style" personnel to set up perimeter patrols. (Def. Ex. 1 at 1-2). The court found the group's arsenal significant and concerning: "The group was armed with weaponry with which to resist intervention by federal authorities. Authorities seized over 50 firearms, 6000 rounds of live ammunition and 1000 rounds of spent shell casing from the Malheur site following the occupation." (*Id.*). And it was undisputed that Bundy, although unarmed himself, lead this armed group. (*Id.; see also* Def. Ex. 2 at 56-57, 61).

Bundy makes much of the fact that federal officials never "formally" ordered him to leave, although he acknowledged that a local sheriff repeatedly encouraged

5

them to leave his community "peacefully." (Def. Ex. 2 at 21). As the prosecutor explained, federal law enforcement officials wanted to avoid a violent confrontation and thus, they opted against issuing demands or ultimatums; the message that defendants' occupation was unlawful and that law enforcement wanted defendants to leave the compound peacefully was nevertheless apparent. (Def. Ex. 2 at 20). Indeed, Bundy did not contradict that proffer despite taking the opportunity to address the court. Bundy's brother and co-defendant Ryan Bundy confirmed that their intent was to take the refuge "openly, notoriously, and hostilely." (*Id.* at 75).

Ammon Bundy agreed, explaining that his intent was to take the refuge through adverse possession (Def. Ex. 2 at 84-85), which as his brother explained, was open and hostile. (Def. Ex. 2 at 75). For Bundy, "adverse possession" meant that he and his followers had to maintain exclusive control over the refuge, and that meant keeping federal employees out.

Although the weight of the evidence against a defendant is the least important factor, particularly strong proof of guilt will favor detention. *Townsend,* 897 F.2d at 995. This case is unusual in that much of the government's proof comes directly from defense efforts to document the crime itself. Moreover, during the detention hearing, Bundy admitted each element of the offense charged. (Def. Ex. 2 at 84-85, 93-94). The government's proof regarding the armed takeover is particularly strong.

6

The district court also properly considered Bundy's strong community and family ties, and it expressly recognized that Bundy did not pose a risk of fleeing the country. (Def. Ex. 1 at 2). On balance, however, the court determined that the risks that Bundy would refuse to follow pretrial release conditions and the risks that he would create another standoff to avoid prosecution were simply too great. That decision was sound and fully supported by the record.

Bundy criticizes the district court's fact-findings by noting that there is no evidence in the record to support them; in fact, however, the court properly relied upon government proffers that directly support its findings. [1] This Court has held that proffers are acceptable proof for bail hearings. *United States v. Winsor,* 785 F.2d 755, 756 (9th Cir. 1986). The government's proffers establish the firepower found at the refuge and the military-style patrols. (Def. Ex. 2 at 11, 15-16). Moreover, another co-defendant in the case (Brian Cavalier) pleaded guilty and admitted that he carried firearms at the refuge. (Cavalier Plea, 3:16-cr-00051-BR, ECF Nos. 799, 800). Co-defendant David Fry, who also has appealed his pretrial detention order to this Court,

---

[1] Because the court's bail ruling was not premised on whether Bundy tore down a refuge fence, it is irrelevant. The court's skepticism with Bundy's claim that he was repairing the fence is, however, well-founded; Bundy publicized his decision to tear down the government's fence and he and others were filmed doing just that. http://www.oregonlive.com/oregon-standoff/2016/01/oregon_standoff_bundy_militant.html. (Last visited August 22, 2016).

admitted that he was armed during the occupation.  *United States v.  Fry*, Ninth Circuit Case No. 16-30174, Docket Entry No. 2, ER Nos. 71, 73, 75, 79.

To the extent Bundy makes the point that no "illegal" firearms were found at the refuge (Def. Br. at 4), the point is accurate but incomplete.  The fact that the guns themselves were lawful does not mean that they were used lawfully.

Next, Bundy's claim that it would contravene the First Amendment for the Court to consider the pending charges in denying release should likewise be rejected. This is not a case in which the defendants are being prosecuted for their speech or protected activities; no one is disputing that Bundy and his followers had a right to protest the *Hammond* case and federal land ownership.  Instead, Bundy is being prosecuted because he chose to protest in an illegal manner that prevented federal employees from doing their jobs.  Neither the district court nor this Court can ignore the crime simply because Bundy claims a constitutional motivation.

Bundy also repeatedly and inaccurately claims that the district court "admitted that it was not unbiased."  (Def. Br. at 15, 16).  In fact, the district court simply observed that it was aware of other aspects of the case because it presided over other defendants' bail detention hearings.  (Def. Ex. 2 at 61).  The court's stated reasons for detaining Bundy were, however, all based upon proffers made during Bundy's detention hearing.  Thus, any references to hearings or evidence raised during co-defendants' detention hearings were harmless.

8

Finally, Bundy's arguments that the district court misunderstood his political beliefs, conflated the analysis governing risk of non-appearance and danger, and relied upon impermissible speculation should be rejected. Comparing the court's description of Bundy's intent to Bundy's testimony demonstrates that the district court fully grasped defendant's theories, but properly rejected them because they are inconsistent with the law. Moreover, the factors governing risk of non-appearance and danger to the community overlap in this case; Bundy's resistance to lawful authority justifies both concerns. Certainty is not required; rather, the statute focuses on the risk of non-appearance and danger. The district court determined that the risks posed by Bundy's release in this case were simply too great; that ruling was appropriate, consistent with this Court's precedent, and fully supported by this record.

## CONCLUSION

Bundy's motion for bail pending a trial should be denied.

DATED this 24th day of August 2016.

Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney
District of Oregon

*s/ Kelly A. Zusman*
KELLY A. ZUSMAN
Assistant U.S. Attorney